Rev. 4/18

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

# CIVIL APPEAL STATEMENT

*Please TYPE. Attach additional pages if necessary.*

11th Circuit Docket Number: 26-13650

| Caption: | |
|---|---|
| Ezra Smith, Plaintiff/Appellee,<br><br>vs.<br><br>Deputy Monique Tracey, et. al.<br><br>Defendants/Appellants. | District and Division: Northern District of Georgia- Atlanta Division<br>Name of Judge: Hon. Thomas W.Thrash<br>Nature of Suit: Civil Rights/ INMATE SELF HARM CLAIM<br><br>Date Complaint Filed: 11/11/2024<br>District Court Docket Number: 1:24-CV-5158-TWT<br><br>Date Notice of Appeal Filed: 10/05/2026<br>☐ Cross Appeal ☐ Class Action<br><br>Has this matter previously been before this court?<br>☐ Yes ☑ No<br>If Yes, provide<br>(a) Caption: ____<br>(b) Citation: ____<br>(c) Docket Number: ____ |

| | Attorney Name | Mailing Address | Telephone, Fax, Email |
|---|---|---|---|
| For Appellant:<br>☐ Plaintiff<br>☑ Defendant<br>☐ Other (Specify) | Timothy Buckley(for Gomez and Jackson) Jason Waymire (for Tracey) (see Exhibit 1) | Buckley Christopher & Hensel, P.C.<br>2970 Clairmont Rd NE<br>Suite 650<br>Atlanta, GA 30329 | T: (404) 974-4574<br>F: (404) 633-9640<br><br>tbuckley@bchlawpc.com |
| For Appellee:<br>☑ Plaintiff<br>☐ Defendant<br>☐ Other (Specify) | Wingo Smith and Jeff Filipovits | SPEARS&FILIPOVITS, LLC<br>315 W Ponce de Leon Ave., Ste. 865<br>Decatur, GA 30030 | (404) 905-2225<br>jeff@civil-rights.law<br>wingo@civil-rights.law |

*Please CIRCLE/CHECK/COMPLETE the items below and on page 2 that apply.*

| Jurisdiction | Nature of Judgment | Type of Order | Relief |
|---|---|---|---|
| ☑ Federal Question<br>☐ Diversity<br>☐ US Plaintiff<br>☐ US Defendant | ☐ Final Judgment, 28 USC 1291<br>☑ Interlocutory Order, 28 USC 1292(a)(1)<br>☐ Interlocutory Order Certified, 28 USC 1292(b)<br>☐ Interlocutory Order, Qualified Immunity<br>☐ Final Agency Action (Review)<br>☐ 54(b) | ☐ Dismissal/Jurisdiction<br>☐ Default Judgment<br>☑ Summary Judgment<br>☐ Judgment/Bench Trial<br>☐ Judgment/Jury Verdict<br>☐ Judgment/Directed Verdict/NOV<br>☐ Injunction<br>☐ Other ____ | Amount Sought by Plaintiff: $ Unspecified<br><br>Amount Sought by Defendant: $ 0.00<br><br>Awarded: $ 0.00<br>to ____<br><br>Injunctions:<br>☐ TRO<br>☐ Preliminary ☐ Granted<br>☐ Permanent ☐ Denied |

Based on your present knowledge:

(1) Does this appeal involve a question of First Impression? ☐ Yes ☑ No
What is the issue you claim is one of First Impression? ______

(2) Will the determination of this appeal turn on the interpretation or application of a particular case or statute? ☐ Yes ☑ No

If Yes, provide
(a) Case Name/Statute ______
(b) Citation ______
(c) Docket Number if unreported ______

(3) Is there any case now pending or about to be brought before this court or any other court or administrative agency that
(a) Arises from substantially the same case or controversy as this appeal? ☐ Yes ☑ No
(b) Involves an issue that is substantially the same, similar, or related to an issue in this appeal? ☐ Yes ☑ No

If Yes, provide
(a) Case Name ______
(b) Citation ______
(c) Docket Number if unreported ______
(d) Court or Agency ______

(4) Will this appeal involve a conflict of law
(a) Within the Eleventh Circuit? ☐ Yes ☑ No
(b) Among circuits? ☐ Yes ☑ No

If Yes, explain briefly:

(5) Issues proposed to be raised on appeal, including jurisdictional challenges:

Whether the district court erred in denying qualified immunity and official immunity on Plaintiff's claims relating to his self harm while he was in jail.

I CERTIFY THAT I SERVED THIS CIVIL APPEAL STATEMENT ON THE CLERK OF THE U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT AND SERVED A COPY ON EACH PARTY OR THEIR COUNSEL OF RECORD, THIS 22 DAY OF October, 2026.

TIMOTHY J. BUCKLEY III
NAME OF COUNSEL (Print)

/s/ Timothy J. Buckley III
SIGNATURE OF COUNSEL

**EXHIBIT 1**

Williams & Waymire

Attorney for Appellant Tracey

JASON WAYMIRE

4330 S. Lee Street
Building 400, Suite A
Buford, GA 30518
(678) 541-0790
jason@wmwlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EZRA SMITH,

Plaintiff,

v.

DEPUTY MONIQUE TRACEY, et al.,

Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-5158-TWT

**OPINION AND ORDER**

This is a civil rights case. It is before the Court on Defendant Monique Tracey's Motion for Summary Judgment [Doc. 74], Defendants Raul Gomez and Shenequa Jackson's Motion for Summary Judgment [Doc. 75], and Defendant Erica Sanchez's Motion for Summary Judgment [Doc. 84] and Motion for Hearing [Doc. 85]. The Court DENIES Defendant Tracey's Motion for Summary Judgment [Doc. 74], DENIES Defendants Gomez and Jackson's Motion for Summary Judgment [Doc. 75], GRANTS Defendant Sanchez's Motion for Summary Judgment [Doc. 84], and DENIES as moot Defendant Sanchez's Motion for Hearing [Doc. 85].

## I. Background[1]

This case arises from a 2024 incident at the Rockdale County Jail (the

[1] The operative facts on the Motions for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

"Jail") involving Plaintiff Ezra Smith and Defendants Monique Tracey, Raul Gomez, Shenequa Jackson, and Erica Sanchez. At the time of the incident, Smith had been arrested, booked, and placed in a holding cell at the Jail with other detainees. (Defs. Gomez & Jackson's Statement of Undisputed Material Facts ("Defs. Gomez & Jackson's SUMF") ¶¶ 2, 5 [Doc. 75-2].) Defendants Jackson, Gomez, and Tracey were detention officers working in the booking area. (*Id.* ¶¶ 7–9; Def. Tracey's Statement of Undisputed Material Facts ("Def. Tracey's SUMF") ¶¶ 2–4 [Doc. 74-2].) Defendant Sanchez was the nurse on duty in the booking area. (Pl.'s Statement of Additional Material Facts Relevant to Defendant Sanchez's Mot. for Summ. J. ("Pl.'s SUMF for Def. Sanchez") ¶ 11 [Doc. 94].) A portion of the events at issue was captured on video.

The events of the incident proceeded as follows. Smith told the other detainees in his cell that he intended to kill himself but also told them that he was joking. (Pl.'s Unified Statement of Additional Material Facts Relevant to Defendants Tracey, Jackson, and Gomez's Mot. for Summ. J.[2] ("Pl.'s SUMF for Defs. Tracey, Jackson, and Gomez") ¶ 9 [Doc. 91].) Another detainee in the holding cell used the intercom system to alert the Jail staff that, "[Smith]'s

[2] The Court notes that only Defendant Tracey responded to Smith's Unified Statement of Additional Material Facts, which related to Tracey's Motion for Summary Judgment and Gomez and Jackson's Motion for Summary Judgment.

going to kill himself. This white guy says he's going to kill himself." (*Id.* ¶ 10.) Defendants Tracey and Jackson testified that they heard this intercom message but believed Smith was joking and did not report the incident. (Tracey Dep. at 57:16–25, 59:9–60:25 [Doc. 79]; Jackson Dep. at 72:19–73:7[Doc. 77].) Gomez testified that he did not recall hearing the intercom message. (Gomez Dep. at 45:17–19 [Doc. 80].) Tracey additionally testified that Jackson told her, "All he's going to do is cry 52. I'm not dealing with him." (Tracey Dep. at 57:7–58:7.) The Jail's code for suicide is 52. (Pl.'s SUMF for Defs. Tracey, Jackson, and Gomez ¶ 42.) Jackson denied making those statements. (Jackson Dep. at 96:17–97:9.)

Later that evening, Smith's mother spoke with Defendant Tracey over the phone and informed her that Smith had recently stated he "didn't feel like he had a reason to go on" and was admitted to a crisis center. (Pl.'s SUMF for Defs. Tracey, Jackson, and Gomez ¶¶ 16, 18; Def. Tracey's Resp. to Pl.'s SUMF for Defs. Tracey, Jackson, and Gomez ¶ 18.) His mother testified that she gave Tracey "the backdrop on everything that led up to this from April until then with the wife [leaving him]." (Pittman Dep. at 35:23–36:12, 37:15–38:8 [Doc. 88].)

By 1:00 a.m. the next morning, Smith was the only detainee remaining in his holding cell and had begun banging on and kicking the cell door, which Defendants Tracey, Jackson, and Gomez each heard. (Pl.'s SUMF for Defs.

Tracey, Jackson, and Gomez ¶¶ 22, 30–31.) Around 1:30 a.m., Tracey walked up to the holding cell door and spoke with Smith for a couple minutes. (Pl.'s Notice of Filing Summ. J. Exs., Ex. 7 ("July 9 Booking Area Video"), at 1:28:16–1:29:28 [Doc. 89-7].) According to Smith, she told him to stop kicking the door, said she spoke to his mother and knew "everything about [him]," thought he was "a piece of shit" who "needed to kill [himself]" and "deserved it," and motioned in way that suggested he should hang himself. (Smith Dep. at 46:17–49:5, 50:18–51:5, 52:14–16, 53:4–7 [Doc. 81].) Video surveillance captured Tracey making a hanging motion while speaking with Smith. (July 9 Booking Area Video, at 1:28:38–1:28:43.) Smith testified that he replied he would "do it" throughout their back-and-forth about killing himself. (Smith Dep. at 54:18–22; 55:2–21.) Tracey then left the holding cell and returned to her desk. (Def. Tracey's SUMF ¶ 24.)

Afterward, Smith began repeating "I'm going to kill myself" and "let me out" through the intercom. (Pl.'s SUMF for Defs. Tracey, Jackson, and Gomez ¶ 38; *see also* Smith Dep. at 57:7–58:9.) Smith testified that Tracey initially "yelled" something like "then fucking kill yourself" but then his additional intercom messages were ignored. (Smith Dep. at 58:1–59:23.) Smith continued to yell and bang in his cell. (Def. Tracey's SUMF ¶ 27.) Tracey testified that Jackson told her, "He can bang all night. . . . Don't worry about it. He'll stop." (Tracey Dep. at 41:1–7.) She testified that the banging stopped soon afterward,

and that is when she noticed that only Smith's feet were visible in the holding cell's video monitor. (Tracey Dep. at 41:4–20.)

Smith had used a telephone cord located inside the holding cell to strangle himself. (Def. Tracey's SUMF ¶ 31; Pl.'s Resp. to Def. Tracey's SUMF ¶ 31; *see also* Pl.'s Notice of Filing Summ. J. Exs., Ex. 6 ("July 9 Holding Cell Video"), at 1:31:14–1:32:00 [Doc. 89-6] (showing Smith wrapping the cord around his neck and then ultimately his legs appearing still on the ground).) Tracey called for the keys to open the cell and for the nurse. (Def. Tracey's SUMF ¶¶ 34–37.) Although Smith was unconscious and did not have a pulse, the staff was able to revive him. (Def. Tracey's SUMF ¶¶ 38–40; Pl.'s Statement of Additional Material Facts Relevant to Defendant Sanchez's Mot. for Summ. J. ("Pl.'s SUMF for Def. Sanchez") ¶ 32.) All three deputies were aware that the holding cell contained a phone with a cord. (Pl.'s SUMF for Defs. Tracey, Jackson, and Gomez ¶¶ 32–35.)

Smith's complaint alleges three claims: (1) deliberate indifference under the Fourteenth Amendment against Defendants Tracey and Jackson, (2) deliberate indifference under the Fourteenth Amendment as to all Defendants, and (3) negligent performance of a ministerial duty as to Defendants Tracey, Gomez, and Jackson. All four Defendants now seek summary judgment as to the claims against them.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. Discussion

### A. Deliberate Indifference (Counts I–II)

The Fourteenth Amendment affords pretrial detainees a right "to be protected from self-inflicted injuries, including suicide." *Gantt v. Everett*, 162 F.4th 1107, 1111 (11th Cir. 2025) (quoting *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015)). Count I of the Complaint alleges a deliberate indifference claim under the Fourteenth Amendment against Defendants Tracey and Jackson. Count II alleges the same but against all Defendants.

A jail official who acts with deliberate indifference to the risk of an inmate's suicide violates the Fourteenth Amendment's right to be protected from the risk of suicide. *Gantt*, 162 F.4th at 1111. A jail official acts with deliberate indifference if (1) the inmate suffered from an "objectively serious medical need," and (2) the official "acted with subjective recklessness as used in the criminal law," meaning the official "was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm."[3] *Wade*, 106 F.4th at 1255. The Eleventh Circuit has clarified this standard in at least two notable ways. A "risk of serious harm" in a jail suicide case means a "strong likelihood" and not a "mere possibility" of suicide. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (2005) (quoting *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003)). And there is no deliberate indifference if the official knew of the risk and "respond[ed] reasonably" to it. *Wade*, 106 F.4th at 1255.

[3] The parties dispute whether the Eighth Amendment's deliberate indifference standard, as recently clarified in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc), applies to Smith's Fourteenth Amendment claims. Smith claims that it does not but acknowledges that applying the *Wade* standard "would not change the outcome" in this case. The Court will follow the binding precedent set by *Gantt* in applying *Wade*'s Eighth Amendment framework to the present jail suicide facts. *See Gantt*, 162 F.4th at 1111 (noting that it is "immaterial" whether a court reviews a prisoner suicide case under the Eighth or Fourteenth Amendment because the standard is "deliberate indifference to the prisoner's taking of his own life" in either case).

The detention officers—Defendants Tracey, Jackson, and Gomez—seek dismissal on qualified immunity grounds. The nurse, Defendant Sanchez, does not raise a qualified immunity defense and instead seeks dismissal on the merits of the deliberate indifference claim.

**1. Qualified Immunity Defense**

To raise a qualified immunity defense, the Defendants must establish that they acted within their discretionary authority. *Bridges v. Poe*, 155 F.4th 1302, 1313 (11th Cir. 2025) (citation omitted). If they show that their conduct involved the exercise of discretionary authority, the Plaintiff must then establish that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Aguirre v. Seminole County*, 158 F.4th 1276, 1296 (11th Cir. 2025) (citation omitted), *petition for cert. filed*, No. 25-1341 (U.S. June 1, 2026).

As an initial matter, the Court holds that Defendants Tracey's, Jackson's, and Gomez's conduct fell within their discretionary authority. An official's conduct falls within her discretionary authority when it, "if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citation omitted). At the time of the incident, Tracey, Jackson, and Gomez were working as detention officers supervising the booking area, where Smith was held. (Defs. Gomez & Jackson's SUMF ¶¶ 7–9;

Def. Tracey's SUMF ¶¶ 2–4.) Their responses to Smith's alleged suicidal behavior while detained in the booking area were therefore "reasonably related" to their discretionary duties. The parties do not dispute that this discretionary authority element is satisfied for qualified immunity purposes.

**a. Constitutional Violation**

The Court next considers whether the Defendants violated Smith's Fourteenth Amendment rights by acting with deliberate indifference to the risk of suicide. As discussed above, the deliberate indifference standard has both an objective and subjective component. Smith easily satisfies the objective requirement of the deliberate indifference test regarding "serious medical need." The undisputed evidence shows that he had threatened suicide multiple times, banged his head repeatedly against the door in the holding cell, and ultimately attempted to take his own life. Additionally, Smith's mother had warned Tracey that Smith had mentioned suicide. The trickier question is whether the subjective recklessness requirement is satisfied—whether Defendants Tracey, Jackson, and Gomez were "subjectively aware that [their] own conduct put the plaintiff at substantial risk of serious harm." *See Wade*, 106 F.4th at 1255. Ultimately, the Court denies summary judgment on the issue of whether the Defendants Tracey, Jackson, and Gomez violated Smith's Fourteenth Amendment rights. The Court begins with Tracey's conduct, followed by Jackson's and Gomez's.

Tracey's alleged conduct could be fairly characterized as egregious. There are ample facts upon which a jury could rely to find Tracey acted with subjective recklessness. While the parties dispute several relevant facts, the following general facts are undisputed. Tracey became aware of Smith's potential risk of suicide first when another inmate reported Smith's 8:00pm threat and then again shortly after when speaking on the phone with Smith's mother. Upon hearing Smith's repeated suicide threats and banging later that evening, Tracey exchanged words with Smith and encouraged him to commit suicide. At no point did she alert medical staff of the suicide threats Smith made over the intercom. A reasonable person would not consider these responses "reasonable," (*but see* Br. in Supp. of Def. Tracey's Mot. for Summ. J., at 11–12), no matter how "quickly" Tracey rendered aid to Smith after his suicide attempt. The undisputed evidence shows that, in the time leading up to the suicide attempt, Tracey responded to Smith's repeated suicide threats by repeatedly encouraging him to commit suicide. Her actions not only reflect a deliberate refusal to seek help for Smith when faced with the risk of self-harm, but something worse—a conscious decision to encourage the self-harm and heighten its risk. Even putting her encouragement aside, to the extent Tracey believed the position of the telephone and the length of its cord lowered the likelihood that Smith could attempt suicide, that is something for a jury to weigh.

Although Jackson's and Gomez's conduct may be better characterized as inaction and delay, a reasonable jury could similarly find that this type of conduct constitutes subjective recklessness. Contrary to Jackson and Gomez's assertions in their brief, the record is not "utterly devoid of any evidence" of "special knowledge" as to Smith's risk of suicide. (*But see* Br. in Supp. of Def. Gomez & Jackson's Mot. for Summ. J., at 14.) Jackson was in the booking area with Tracey when he heard one of the inmates report Smith's suicide threat. (Pl.'s SUMF for Defs. Tracey, Jackson, and Gomez ¶ 12.) A jury could infer he overhead Tracey's phone call with Smith's mother because Tracey put the call on speakerphone while both were in the booking area. (*Id.* ¶ 16–19.) Jackson apparently refused to process Smith's paperwork, called Smith a "white privilege prick" who could remain in the holding cell alone, and instructed Tracey to leave and "forget him." (*Id.* ¶¶ 22–27.) Jackson heard Smith's repeated suicide threats and banging. (*Id.* ¶¶ 29–30). Instead of responding to Smith, Jackson remarked that Smith could "bang all night" and stated he would not "deal with Smith. (*Id.* ¶ 38–39.) He overhead Tracey and Smith yelling at each other and Tracey's quip that Smith should "do it" (i.e., follow through with his suicide threat). (*Id.* ¶¶ 56–57.) After Smith used the intercom to tell Jackson he was suicidal, Jackson "hung up the intercom" and stopped answering Smith's other intercom messages. (*Id.* ¶¶ 61–67.) The same could be said for Defendant Gomez. While Gomez didn't speak or interact with Smith,

a jury could find that he developed a subjective awareness that his refusal to intervene created a strong likelihood that Smith would attempt suicide. He observed Smith's suicide threats throughout the evening and heard Tracey's attempts to agitate Smith, yet he did not take any action. A jury could find this failure to act constitutes deliberate indifference. For these reasons, the Court will deny Tracey's, Jackson's, and Gomez's Motions for Summary Judgment as to the constitutional violation issue of the deliberate indifference claims.

**b. Clearly Established Law**

Having denied summary judgment on the constitutional violation question, the Court next considers the clearly established law question. In short, a law is clearly established if, "at the time of the officer's conduct," it was "sufficiently clear that every reasonable officer would understand that what he is doing is unlawful." *Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021) (citation modified) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). A plaintiff can establish that his or right was clearly established in three ways: (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle should control the novel facts in this situation"; or (3) "this case fits within the exception of conduct which so obviously violates that constitution[al] [right] that prior case law is unnecessary." *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1261 (11th Cir. 2025) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1158–59 (11th Cir.

2005)). Courts may only consider law handed down by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court under the first two tests, but they may consider "persuasive decisions from other circuits" under the third test. *Id.* at 1263.

Eleventh Circuit precedent clearly establishes that an officer who knows of an inmate's suicide threat yet fails to take any steps to prevent the inmate from committing suicide is deliberately indifferent. The Court looks to *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1270 (11th Cir. 2005), as a "materially similar case." *Gilmore*, 144 F.4th at 1261. In *Snow*, the Eleventh Circuit vacated the district court's decision to grant summary judgment in favor of a defendant officer. *Snow ex rel. Snow*, 420 F.3d at 1272–73. It found that a jail officer would be deliberately indifferent under the following facts: (1) the officer was aware that the inmate had previously attempted suicide, (2) the inmate told the officer that he was suicidal, (3) the officer "did nothing" to address the risk of suicide. *Id.* at 1270. The Eleventh Circuit characterized the officer's conduct as a "complete failure to take any action" upon evidence that the officer did not communicate the inmate's suicide risk to other staff, remove dangerous items from his cell or place him in a safe cell, return the inmate to a medical center "for treatment and observation," or implement any other suicide prevention protocols that "he would have taken had he regarded [the inmate] as a suicide risk." *Id.* at 1270.

This lack of action is "materially similar" to the lack of action taken by Defendants Jackson and Gomez. As explained above, Jackson and Gomez became subjectively aware that Smith had previously been suicidal, at least by way of hearing the conversation between Tracey and Smith's mother. Both Jackson and Gomez heard Smith repeatedly threaten suicide in the time before the attempt. And neither took any affirmative steps to address the suicide risk, despite observing Defendants Tracey and Sanchez fail to take any action as well. Therefore, the Court finds that a reasonable officer would understand that Jackson's and Gomez's conduct amounted to deliberate indifference.

The same can be said regarding Defendant Tracey, who knew about Smith's past suicidal ideation, heard him repeatedly threaten suicide, and did not notify medical personnel or take any other action to ensure Smith's safety. But the Court additionally and separately finds that Tracey's actions "fit[ ] within the exception of conduct that so obviously violate[d]" Smith's Fourteenth Amendment rights. *See Gilmore*, 144 F.4th at 1261. The evidence shows that Tracey affirmatively encouraged Smith to commit suicide after she was made aware of Smith's suicidal ideation and heard Smith threaten suicide. In the Court's view, any reasonable officer would understand that encouraging a suicidal inmate to commit suicide, especially where the inmate was left alone in a cell and no suicide prevention protocols had been implemented, amounts to deliberate indifference to the inmate's risk of suicide. For these reasons,

Defendants Tracey, Jackson, and Gomez are not entitled to qualified immunity. Their Motions for Summary Judgment will be denied as to Counts I and II.

**2. Defendant Sanchez**

The Court grants Defendant Sanchez's Motion for Summary Judgment as to the deliberate indifference claim against her in Count II. It is undisputed that Sanchez could not hear the intercom communications between the holding cell and the detention officers, meaning she did not hear one of the inmates inform the detention officers that Smith had threatened suicide and she did not hear any statements Smith made directly into the intercom later that evening. (*See* Def. Sanchez's SUMF ¶ 11.) While Sanchez testified that she heard the exchange between Tracey and Smith in which Smith threatened suicide and Tracey encouraged him to do so, this exchange occurred about five minutes before Smith attempted suicide. Without further knowledge as to Smith's prior history of suicidal ideation or repeated threats to kill himself over the intercom that evening, Smith cannot show Sanchez acted with deliberate indifference in failing to render assistance in the immediate five minutes after Smith's and Tracey's heated exchange. Thus, the evidence does not show that Sanchez was aware of a "strong likelihood" of the risk of suicide. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1115. For that reason, Smith cannot establish the second prong of the deliberate indifference standard as to Sanchez. *Gantt*, 162

F.4th at 1111.

**B. Negligence (Count III)**

Count III raises a claim for negligence performance of a ministerial duty against Defendants Tracey, Jackson, and Gomez.

**1. Official Immunity Defense**

The Court begins by addressing the Defendants' official immunity defense. Under Georgia's official immunity doctrine, state officials may not be held personally liable for "discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption." *Everson v. Dekalb Cnty. Sch. Dist.*, 344 Ga. App. 665, 667 (2018). But state officials may be held personally liable for negligently performing "ministerial" actions. *Glass v. Gates*, 311 Ga. App. 563, 574 (2011).

The parties contest whether the Defendants' actions were discretionary or ministerial. A "ministerial act" is "one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *McDowell v. Smith*, 285 Ga. 592, 593 (2009) (quoting *Murphy v. Bajjani*, 282 Ga. 197, 199 (2007)). By contrast, a "discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Id.* (quoting *Murphy*, 282 Ga. at 199).

The Court denies summary judgment on the Defendants' official immunity defense, finding that Tracey, Jackson, and Gomez had at least one ministerial duty to notify medical staff of a suicide threat. Jail Policy 5.22 provides:

> Any inmate who threatens or attempts self-mutilation or suicide will be viewed as a MENTAL HEALTH EMERGENCY. Upon notification, the Mental Health Professional will provide a face-to-face interview with the inmate. . . . At times other than normal working hours, Jail staff will notify the Medical Department which will provide immediate medical intervention. The Medical Staff will contact the on-call Mental Health Professional for notification purposes. Based upon the inmate's assessment, a decision will be made by Mental Health Professional regarding the appropriate housing for the affected inmate. . . . The inmate may also be placed on a 'Suicide Watch' to monitor his/her behavior.

(Jail Policy 5.22 ¶ I(A)–(B), (D), [Doc. 74-1].) The policy indicates that detention officers do not have discretion to determine whether a suicide threat is sincere. Rather, "[a]ny" suicide threat "will" be treated as a "mental health emergency," requiring detention officers to notify medical staff to assess the inmate and determine the appropriate response. The Court need not consider the Defendants' additional testimony regarding whether the duty to notify was discretionary as a result, though the Court notes that there is evidence in the record to support that the Defendants knew they had no discretion on the duty to notify. For example, Tracey acknowledged this lack of discretion during her Merit Board hearing:

> Justin Kenney: [Policy 5.22] states that any inmate who threatens or attempts self-mutilation or suicide will be viewed as a mental health emergency. Were you aware of that?
>
> Defendant Tracey: Yes, sir.
>
> . . .
>
> Justin Kenney: Major Welch stated that [ ], when an inmate threatens suicide, deputies do not have any discretion. They can't decide whether it is a legitimate, bona fide, sincere threat of suicide. The deputy is to immediately take that threat and escalate it to . . . a mental health professional that's on duty. Do you agree with that statement?
>
> Defendant Tracey: Yes, sir. I do agree.

(Pl.'s Resp. Br. in Opp'n to Def. Tracey's Mot. for Summ. J., Ex. 11 ("Aug. 23, 2024, Tracey Merit Board Hearing"), at 1:18:30–1:19:50 [Doc. 89-11].) The Court therefore treats this aspect of Jail Policy 5.22 as a ministerial duty, the breach of which lies beyond the protection of official immunity. Having determined that the Defendants are not entitled to official immunity as to their duty to notify medical staff of a suicide threat, the Court next addresses the merits of the negligence claim.

**2. Merits**

To establish a negligence claim, Smith must show that the Defendants had a legal duty, they breached that duty, they caused his alleged injuries, and damages resulted from the breach. *Rasnick v. Krishna Hosp., Inc.*, 289 Ga. 565, 566 (2011) (citing *John Crane, Inc. v. Jones*, 278 Ga. 747, 751 (2004)). Tracey challenges the breach and causation elements, in addition to raising two

affirmative defenses. As to breach, Tracey asserts that she complied with Jail Policy 5.22 because (a) Smith's statements from around 8:00pm were jokes rather than suicide threats and thus did not require notifying medical staff and (b) Smith's statements from around 1:30am the next morning were heard by Nurse Sanchez contemporaneously and thus did not require further notification. (Br. in Supp. of Def. Tracey's Mot. for Summ. J., at 22–23.) As to causation, she argues that she did not cause Smith's injuries because "no mental health professional was on hand" to immediately evaluate and protect Smith even had she reported his 1:30am threat. (*Id.* at 23.) As to the affirmative defenses, Tracey first argues that she owed no duty because Smith "assumed the risk"—that Smith knew the danger of wrapping a cord around his neck—and he voluntarily attempted to end his own life. (*Id.* at 23–24.) She further argues that Smith's failure to exercise ordinary care to avoid the obvious danger of strangling himself precludes recovery on his negligence claim. (*Id.* at 24–25.) The Court addresses each argument in turn.

The Court denies summary judgment as to Tracey on the merits of the negligence claim. First, a reasonable jury could find that Tracey breached her ministerial duty to notify medical staff. Tracey's argument that Smith's 8:00pm statement is best construed as a "joke" and not a true suicide threat is unpersuasive in light of Jail Policy 5.22's language. The written policy (and Tracey's statements recognizing the policy) indicates that notifying medical

staff was required regardless of whether a deputy believes an inmate's suicidal statements are sincere or fake. It is undisputed that Tracey did not notify any medical staff at the time. The Court need not assess whether Tracey breached her ministerial duties again after the 1:30am statements, but a reasonable jury could conclude as much even if Nurse Sanchez heard some of Smith's additional threats. It is undisputed that Smith made several threats of suicide using the intercom, to which Defendant Sanchez did not have access. Tracey's causation argument fails because even if there was no mental health professional on hand, it is undisputed that there were medical professionals available, and she still failed to report Smith's suicide threats to those professionals. (*See* Jail Policy 5.22 ¶ I(A)(2)).

As to the affirmative defenses Tracey raises, the Georgia Court of Appeals has held that

> [T]here is no bright-line rule in Georgia under which the doctrines of assumption of the risk and comparative negligence always bar recovery in cases of suicide. To the contrary, we have recognized that determining a person's assumption of the risk when that person has killed himself or herself can be a fact-intensive inquiry appropriate for a jury.

*Brantley v. Jones*, 363 Ga. App. 466, 480 (2022). And, even in a case involving suicide, the degree that the defense of comparative negligence is applicable is a matter for the jury's consideration and is not determinable as a matter of law. *Id.* Thus, summary judgment is not appropriate on these grounds, either.

Defendants Jackson and Gomez do not appear to seek summary judgment on the negligence claim. To the extent they do, however, the Court denies such request. It is undisputed that they heard Smith's threat of suicide and subsequent threats of suicide over the intercom, and they did not notify any medical staff. Accordingly, a reasonable jury could likewise find that Jackson and Gomez breached their ministerial duty to notify medical staff, which caused Smith's attempted suicide due to lack of medical intervention. (*See* Jail Policy 5.22 ¶ I(A)(2) (providing that once medical staff are notified of a threat of suicide, they "will provide immediate medical intervention.").[4]

## IV. Conclusion

For the reasons set forth above, the Court DENIES Defendant Monique Tracey's Motion for Summary Judgment [Doc. 74], DENIES Defendants Raul Gomez and Shenequa Jackson's Motion for Summary Judgment [Doc. 75], GRANTS Defendant Erica Sanchez's Motion for Summary Judgment [Doc. 84], and DENIES as moot Defendant Sanchez's Motion for Hearing [Doc. 85].

SO ORDERED, this 10th day of September, 2026.

THOMAS W. THRASH, JR.
United States District Judge

[4] Because the Court is denying the Defendants' Motions for Summary Judgment, it need not address their arguments against attorney's fees and punitive damages at this time.