**No. 26-13650-DD**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**EZRA SMITH,**
*Plaintiff-Appellee,*

v.

**MONIQUE TRACEY, SHENEQUA JACKSON, and RAUL GOMEZ,**
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:24-cv-05158-TWT

---

# PLAINTIFF-APPELLEE'S SUPPLEMENTAL BRIEFING ON JURISDICTION

---

Jeff Filipovits
Wingo Smith
FILIPOVITS & SMITH, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
(404) 905-2225
jeff@civil-rights.law
wingo@civil-rights.law

James M. Slater
SLATER LEGAL PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
(404) 458-7283
james@slater.legal

*Counsel for Plaintiff-Appellee Ezra Smith*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Under Eleventh Circuit Rule 26.1-1, Plaintiff-Appellee certifies that the following persons and entities have an interest in the outcome of this appeal:

Association County Commissioners of Georgia-Interlocal Risk Management Agency (ACCG-IRMA), insurer for Appellants

Buckley Christopher & Hensel, P.C. – Counsel for Defendants-Appellants Gomez and Jackson

Buckley, Timothy J., III – Counsel for Defendants-Appellants Gomez and Jackson

Christopher, Kelly – Counsel for Defendants-Appellants Gomez and Jackson

County Reinsurance, LTD, reinsurer for Association County Commissioners of Georgia-Interlocal Risk Management Agency

Filipovits & Smith, LLC – Counsel for Plaintiff-Appellee

Filipovits, Jeff – Counsel for Plaintiff-Appellee

Frankson, Michael G. – Counsel for Defendant Sanchez

Gomez, Raul – Defendant-Appellant

Huff, Powell & Bailey, LLC – Counsel for Defendant Sanchez

Jackson, Shenequa – Defendant-Appellant

Levett, Eric J. – Rockdale County Sheriff

O'Brien, Eric J. – Counsel for Defendants-Appellants Gomez and Jackson

Sanchez, Erica – Defendant below

Slater Legal PLLC – Counsel for Plaintiff-Appellee

Slater, James M. – Counsel for Plaintiff-Appellee

Smith, Ezra – Plaintiff-Appellee

Smith, Wingo – Counsel for Plaintiff-Appellee

Thrash, Hon. Thomas W., Jr. – United States District Judge

Tracey, Monique – Defendant-Appellant

Veal, Antonio E. – Counsel for Defendant Sanchez

Waymire, Jason C. – Counsel for Defendant-Appellant Tracey

Williams & Waymire, LLC – Counsel for Defendant-Appellant Tracey

Williams, Terry – Counsel for Defendant-Appellant Tracey

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS


Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Table of Contents ..........................................................................................i

Table of Citations ........................................................................................ iii

I. Introduction..................................................................................................1

II. Interlocutory jurisdiction depends on whether an appeal presents a legal question. ......................................................................................................2

A. For qualified immunity, the Court reviews whether the conduct the district court assumed violated clearly established law, not whether the record supports those assumptions. ..................................2

B. For official immunity, the Court reviews whether the duty was ministerial, not whether the official breached it. ..................................3

III. Viewed in Plaintiff's favor, the record shows that each Defendant knew Plaintiff was threatening suicide and did nothing to get him help, and that Tracey encouraged him to do it. ...............................................................4

IV. The Court lacks jurisdiction over the qualified immunity appeals because Defendants' arguments dispute the Favorable Facts. .........................8

A. Tracey's clearly established argument rests on her own version of what she knew and did, and omits that she encouraged Plaintiff to kill himself. ........................................................................8

1. Tracey's argument that the law was not clearly established rests on two disputed premises: lack of knowledge and reasonableness. ...............................................9

2. Tracey's first premise, that she lacked knowledge of a strong likelihood of suicide, is a factual determination. ...........10

3. Tracey's second premise, that she acted reasonably, rests on her characterization of the evidence. ..................................11

B. Jackson and Gomez's clearly established argument rests on disputed premises about what they knew and when they knew it. ..........................................................................................12

1. Jackson and Gomez's arguments both turn on what they knew. .........................................................................13

2. Their timing argument presents disputes with the facts favorable to Plaintiff, not a legal question. ............................. 14

V. No Defendant challenged the ministerial duty below, and their official immunity arguments do not give the Court jurisdiction now ........................ 16

A. Tracey conceded there was a ministerial duty, and her arguments below focused on her breach of the duty. .......................... 16

1. Tracey effectively conceded the duty the district court found. ......................................................................... 16

2. Tracey's remaining arguments go to whether there was a breach, which is the merits .................................................... 17

3. Tracey's arguments that her conduct was discretionary address duties the district court never relied upon .................... 18

B. Jackson and Gomez never preserved an official immunity argument. ........................................................................................ 18

VI. Any appeal that proceeds should be confined to legal questions decided on the record favorable to Plaintiff. ............................................... 20

VII. Conclusion ...................................................................................... 21

Certificate of Compliance ..................................................................... 23

Certificate of Service ............................................................................ 24

# TABLE OF CITATIONS

## Cases

*Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004) .................. 18

*Aguirre-Jarquin v. Seminole Cnty.*, 158 F.4th 1276 (11th Cir. 2025) .................... 21

*Chisesi v. Hunady*, No. 21-11700, 2024 WL 1638587 (11th Cir. Apr. 16, 2024) .................. 20

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092 (11th Cir. 2005) .................. 13

*Corley v. Long-Lewis, Inc.*, 965 F.3d 1222 (11th Cir. 2020) .................. 2

*Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996) .................. 20

*English v. City of Gainesville*, 75 F.4th 1151 (11th Cir. 2023) .................. 2, 3, 16, 17

*Farmer v. Brennan*, 511 U.S. 825 (1994) .................. 8

*Fed. Trade Comm'n v. Corpay, Inc.*, 164 F.4th 807 (11th Cir. 2026) .................. 19

*Goebert v. Lee Cnty.*, 510 F.3d 1312 (11th Cir. 2007) .................. 12, 15

*Greason v. Kemp*, 891 F.2d 829 (11th Cir. 1990) .................. 12

*Hall v. Flournoy*, 975 F.3d 1269 (11th Cir. 2020) .................. 9, 18

*In re MDL-1824 Tri-State Water Rts. Litig.*, 644 F.3d 1160 (11th Cir. 2011) .................. 21

*Jarvis v. City of Daytona Beach*, No. 24-13456, 2026 WL 323259 (11th Cir. Feb. 6, 2026) .................. 4

*Johnson v. Jones*, 515 U.S. 304 (1995) .................. 2, 12, 20

*LaCroix v. Town of Fort Myers Beach*, 38 F.4th 941 (11th Cir. 2022) .................. 19

*Lopez v. City of Opa-Locka*, No. 25-12239, 2026 WL 3267263 (11th Cir. Oct. 30, 2026) .................. 2, 3

*Lundy v. Hancock Cnty.*, 368 Ga. App. 772 (2023) .................. 18

*Lundy v. Kemp*, 379 Ga. App. 374 (2026) ........................................................4, 17

*McDaniel v. Woodard*, 886 F.2d 311 (11th Cir. 1989)............................................3

*McDowell v. Smith*, 285 Ga. 592 (2009)..................................................................3

*Melendez v. Sec'y of Dep't of Corr.*, No. 23-12424, 2024 WL 3880013 (11th Cir. Aug. 20, 2024) ........................................8, 13, 14, 15, 21

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ................................................................4

*Murdock v. Montgomery Cnty.*, No. 21-13616, 2024 WL 4637687 (11th Cir. Oct. 31, 2024).........................................................................12, 16

*Nelson v. Tompkins*, 89 F.4th 1289 (11th Cir. 2024)...............................................20

*Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998)....................................................2

*Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262 (11th Cir. 2005) ......................................................................................................7, 12

*Stanley v. City of Dalton*, 219 F.3d 1280 (11th Cir. 2000).....................................20

*Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814 (11th Cir. 2010) ...........................................................................................................21

# I. INTRODUCTION

While alone in a holding cell at the Rockdale County Jail, Plaintiff attempted suicide after Defendant Monique Tracey repeatedly told him to kill himself. He used what was at hand, a corded phone in his cell. Although each Defendant heard Plaintiff express suicidal ideation, and the other two Defendants witnessed Tracey encourage Plaintiff to hang himself, no one attempted to get medical help until after he attempted suicide, nearly five minutes later.

The Court asked the parties to address its jurisdiction over this interlocutory appeal. The Court should dismiss this appeal for lack of jurisdiction because Defendants' arguments below disputed the facts rather than presenting a legal question about immunity. If Defendants now frame their arguments on a legal question presented by the facts assumed by the district court, this Court should confine the appeal to that question, decided on those facts, and dismiss the rest.

Part II sets out when the Court may review denials of qualified and official immunity. Part III lists the facts favorable to Plaintiff. Part IV shows that Defendants' qualified immunity arguments disputed those facts. Part V shows that no Defendant challenged the ministerial duty the district court found, so their official immunity arguments give the Court no jurisdiction. Part VI explains how the Court should confine any appeal that proceeds.

## II. INTERLOCUTORY JURISDICTION DEPENDS ON WHETHER AN APPEAL PRESENTS A LEGAL QUESTION.

The Court has a threshold obligation to ensure it maintains jurisdiction to hear an appeal. *English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023) (quoting *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020)). Whether the Court has jurisdiction to review the denial of summary judgment on qualified or official immunity grounds depends on whether the appeal presents a legal question. *See Sheth v. Webster*, 145 F.3d 1231, 1235–36 (11th Cir. 1998). Tracey's response does not say what question her brief will "reveal," only that her appeal "does not turn on any disputed fact issue." App. Doc. 24 at C-3, C-6; *see* App. Doc. 25 at 4 (adopting Tracey's response). Nevertheless, without the benefit of Defendants' opening briefs, Plaintiff relies on their arguments before the district court in their motions for summary judgment and the district court's order. *See English*, 75 F.4th at 1156. Those arguments disputed the facts, not the law.

### A. For qualified immunity, the Court reviews whether the conduct the district court assumed violated clearly established law, not whether the record supports those assumptions.

When an appellant's arguments on qualified immunity rest only on disputed facts, not the law, this Court lacks jurisdiction over the interlocutory appeal. *English v. City of Gainesville*, 75 F.4th at 1155–56; *Johnson v. Jones*, 515 U.S. 304, 313 (1995); *see also Lopez v. City of Opa-Locka*, No. 25-12239, 2026 WL 3267263, at *2–3 (11th Cir. Oct. 30, 2026). An appeal presents a legal question

when it asks "whether certain undisputed conduct violated" the Constitution "or whether the law was clearly established." *English*, 75 F.4th at 1156. Calling factual disputes legal questions does not change their character. *Id.* (officers who "tr[ied] to cast their arguments as legal disputes" raised only a dispute "about what the evidence could prove at trial"); *Lopez*, 2026 WL 3267263, at *3 (rejecting arguments that "essentially . . . ask this court to reject the district court's evidentiary findings").

When there is a legal question, the Court "assume[s] the facts to be as plaintiff alleges them and then determine[s] the purely legal issue of whether those facts show a violation of clearly established rights." *McDaniel v. Woodard*, 886 F.2d 311, 313 (11th Cir. 1989).

### B. For official immunity, the Court reviews whether the duty was ministerial, not whether the official breached it.

Georgia official immunity is immunity from suit, so its denial is ordinarily appealable. *English*, 75 F.4th at 1157. "But as in the qualified immunity context," the Court lacks jurisdiction "where the appeal turns on issues of evidentiary sufficiency." *Id.* Under Georgia law, the immunity question is whether the official's act was ministerial or discretionary. Doc. 107 at 16 (citing *McDowell v. Smith*, 285 Ga. 592, 593 (2009)).

Whether the official was negligent does not answer whether she may be sued at all. An argument that a plaintiff failed to establish the elements of a state law claim "is an evidence sufficiency claim that, on its own, does not present a legal issue that this Court can review." *Jarvis v. City of Daytona Beach*, No. 24-13456, 2026 WL 323259, at *3 (11th Cir. Feb. 6, 2026) (applying the same rule to immunity under Florida law). Negligence is an element of the claim under Georgia law, *see Lundy v. Kemp*, 379 Ga. App. 374, 383 (2026), not a question "conceptually distinct from the merits." *Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985).

## III. VIEWED IN PLAINTIFF'S FAVOR, THE RECORD SHOWS THAT EACH DEFENDANT KNEW PLAINTIFF WAS THREATENING SUICIDE AND DID NOTHING TO GET HIM HELP, AND THAT TRACEY ENCOURAGED HIM TO DO IT.

Defendants were deputies at the Rockdale County Jail, where in 2024 Plaintiff attempted suicide after Defendant Monique Tracey repeatedly encouraged him to kill himself within view and earshot of her coworkers, Defendants Shenequa Jackson and Raul Gomez. The district court denied summary judgment on every claim against Defendants.[1] In doing so, it identified the following facts

---

[1] The district court granted summary judgment to a fourth defendant, Erica Sanchez, who was employed by a private contractor as a nurse at the jail. Doc. 107 at 15–16.

favorable to Plaintiff (the "Favorable Facts"), several of which it described as undisputed. The facts show three things: what each Defendant knew, what each did and did not do, and what jail policy required. Under the rule in Part II, these are the facts any appeal must take as given:

1. Around 8:00 p.m., another inmate reported over the intercom that Plaintiff was going to kill himself. Tracey and Jackson heard the report. Doc. 107 at 2–3, 10–11.
2. Later that evening, Plaintiff's mother told Tracey by phone that Plaintiff had recently stated he "didn't feel like he had a reason to go on" and had been admitted to a crisis center. *Id.* at 3, 10.
3. Tracey put the call on speakerphone in the booking area, and a jury could infer that Jackson overheard it. *Id.* at 11.
4. All three Defendants knew that the holding cell contained a phone with a cord. *Id.* at 5.
5. By 1:00 a.m., Plaintiff was alone in the holding cell, banging on and kicking the door, and Tracey, Jackson, and Gomez each heard him. *Id.* at 3–4.
6. Plaintiff repeatedly threatened suicide and banged his head against the door. Tracey and Jackson heard the repeated threats. *Id.* at 9–11.

7. Gomez "observed Smith's suicide threats throughout the evening and heard Tracey's attempts to agitate Smith." *Id.* at 12.[2]

8. Tracey "responded to Smith's repeated suicide threats by repeatedly encouraging him to commit suicide," including with a hanging motion captured on video. *Id.* at 4, 10.

9. Jackson apparently refused to process Plaintiff's paperwork and told Tracey to "forget him." She remarked that Plaintiff could "bang all night," said she would not deal with him, and overheard Tracey tell Plaintiff to "do it." *Id.* at 11.

10. After Plaintiff told Jackson over the intercom that he was suicidal, Jackson "hung up the intercom" and stopped answering his other intercom messages. *Id.* at 11.

---

[2] The record against Gomez is stronger than the facts the district court needed to deny summary judgment. Gomez testified that when Plaintiff said he was suicidal, he heard Tracey respond, "well, be a man about it; do it then." *See* Doc. 93-1 at 8 ¶ 22. Video shows him standing next to Tracey as she encouraged Plaintiff to commit suicide. *See* Doc. 91 at 10 ¶ 55. He did not report what he saw and heard. Doc. 91 at 11 ¶ 59. According to Tracey, after Plaintiff's attempt, Gomez came up to her laughing and said, "I can't believe you was just telling him to do it, and he did it," adding that he couldn't believe Plaintiff was "dumb enough to do it." He thought it was "hilarious." *See* Doc. 91 at 20 ¶ 100. A jury could infer from his own words that Gomez knew Tracey had told Plaintiff to kill himself.

11. No Defendant notified medical staff or took any other step to address the risk. *Id.* at 10, 12, 14, 21.

12. Jail Policy 5.22 required officers to notify medical staff of any suicide threat, "regardless of whether a deputy believes an inmate's suicidal statements are sincere or fake." *Id.* at 17, 19–20.

13. About five minutes after Tracey's encouragement, Plaintiff used the phone cord to strangle himself. He was unconscious and had no pulse when staff revived him. *Id.* at 5, 15.

On these facts, the district court held that a jury could find each Defendant deliberately indifferent: Jackson and Gomez because they knew Plaintiff posed a strong likelihood of attempting suicide yet did nothing,[3] and Tracey because she not only failed to alert medical staff to Plaintiff's suicidal ideation, Doc. 107 at 10, but made "a conscious decision to encourage the self-harm and heighten its risk."

---

[3] The record against Jackson is also stronger than the facts the district court needed to deny summary judgment. According to Tracey, Jackson remarked after Plaintiff's attempt that Plaintiff had done "the same thing" in the adjacent holding cell, Cell 6. *See* Doc. 91 at 12 ¶ 66; Doc. 93 at 6, 15. Tracey likewise testified that Jackson refused to process Plaintiff's intake because he was a "white privilege prick" and that Jackson said he would "cry 52." *See* Doc. 107 at 11; Doc. 91 at 8 ¶ 41. A jury could infer from those statements to Tracey that Jackson knew Plaintiff had previously attempted suicide using a phone cord while he was threatening suicide that night in a cell with the same corded phone.

*Id.* at 10–12. It held that the law was clearly established, both under *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262 (11th Cir. 2005), and, as to Tracey, because encouraging a suicidal inmate to kill himself is obviously unconstitutional. *Id.* at 13–14. And it held that the Rockdale County Sheriff's Policy 5.22 imposed a ministerial duty to notify medical staff, which a jury could find each Defendant breached. *Id.* at 17–21.

## IV. THE COURT LACKS JURISDICTION OVER THE QUALIFIED IMMUNITY APPEALS BECAUSE DEFENDANTS' ARGUMENTS DISPUTE THE FAVORABLE FACTS.

Defendants' summary judgment briefs argued their own version of events. None asked whether, accepting the Favorable Facts, they violated clearly established law. If Defendants present the same arguments here, the Court lacks jurisdiction over the appeal.

### A. Tracey's clearly established argument rests on her own version of what she knew and did, and omits that she encouraged Plaintiff to kill himself.

Tracey's briefs argued that the law was not clearly established, resting that argument on two others—lack of subjective knowledge and the reasonableness of her response to the threat of suicide—while ignoring key facts and relying on facts the district court never assumed. Her subjective knowledge is a factual determination. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). And her omission of key evidence against her made the sufficiency of the evidence the core of each of

her arguments, depriving this Court of jurisdiction over her appeal. *See Melendez v. Sec'y of Dep't of Corr.*, No. 23-12424, 2024 WL 3880013, at *6 (11th Cir. Aug. 20, 2024) (dismissing where appellants' arguments did not accept the district court's view of the facts and so presented factual disputes, not legal questions).

### *1. Tracey's argument that the law was not clearly established rests on two disputed premises: lack of knowledge and reasonableness.*

For this Court to have jurisdiction over the denial of Tracey's qualified immunity defense, she would need to argue that a reasonable officer could have believed that doing nothing to get help for a depressed, suicidal inmate, while encouraging him to stop talking about suicide and actually hang himself, was lawful. *Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020) (clearly established prong is "purely a question of law" and asks "even if the events transpired in the way the plaintiff asserts, did the alleged misconduct amount to a violation of clearly established law?"). Instead, Tracey's argument below rested on two premises built on rose colored facts: that she lacked knowledge of a strong likelihood of suicide, and that she acted reasonably. Doc. 74-3 at 16 ("As explained above, Tracey (1) did not have sufficient information to conclude that Smith presented a 'strong likelihood' of suicide; and (2) Tracey's actions were reasonable . . . .").

### 2. *Tracey's first premise, that she lacked knowledge of a strong likelihood of suicide, is a factual determination.*

Tracey argued that Plaintiff's suicidal ideation was not credible and that she did not know there was a risk that he could commit suicide while in the cell. Doc. 74-3 at 6. While Tracey acknowledged that another inmate used the intercom to tell her and Defendant Jackson that Plaintiff was talking about committing suicide, she argued that the report was made "jokingly," so it did not give her knowledge of a strong likelihood that he was suicidal. *See id.* at 6, 8; Doc. 100 at 10. But she did not discuss what Plaintiff's mother told her about Plaintiff's hopelessness or recent admission to a crisis center, *see* Doc. 107 at 3; Doc. 100-1 at 5–6 ¶¶ 16–20, or how that information affected her claim to qualified immunity. Nor did she grapple with the testimony that she repeatedly encouraged Plaintiff to kill himself. Instead, she euphemistically described her repeated yelling at Plaintiff to kill himself, and specifically to hang himself, as a "heated yelling match at the end of a long difficult shift" and a "heated verbal exchange." Doc. 74-3 at 6, 18.

Her contention that it was infeasible for Plaintiff to hang himself, *see* Doc. 74-3 at 8–9, is belied by the fact that she encouraged him to do just that in a cell that contained a corded phone. Doc. 107 at 4–5, 10.

### 3. *Tracey's second premise, that she acted reasonably, rests on her characterization of the evidence.*

Tracey's omission of the fact that she told Plaintiff to hang himself undermined her argument that she acted reasonably. Nowhere in her argument does she grapple with the fact that she repeatedly told Plaintiff to kill himself. She instead relies on two facts that the district court did not assume: that she "monitored" Plaintiff closely after encouraging him to commit suicide, and that after he attempted suicide she responded "quickly." Doc. 74-3 at 11–13; Doc. 100 at 4, 7–8.

Both "facts" are just her characterizations. Indeed, her own statement of facts presents what happened as a "realization" that Plaintiff went quiet, not the result of her careful monitoring. Doc. 74-2 at 4–5 ¶ 34 ("Within five (5) minutes of leaving the cell window, Deputy Tracey realized that Plaintiff had stopped yelling and banging, so she went to his cell to investigate."). As the district court noted, her pretension to a "quick" response ignores the notice of Plaintiff's suicidal ideation from earlier in the night and is willfully blind to her repeated encouragement to Plaintiff to kill himself. Doc. 107 at 10. Even now, Tracey tells the Court that her appeal "does not turn on any disputed fact issue." App. Doc. 24 at C-6. She said the same of her "monitoring" below. Doc. 100 at 4. Calling a fact undisputed does not make it so.

Without those characterizations, the facts are these: after Tracey told Plaintiff to hang himself, she went back to her other duties, and when Plaintiff stopped making noise, she went to his cell. At the cell, she found he had hanged himself with the phone cord. Doc. 107 at 4–5.

Tracey's reliance on her own characterizations, instead of the facts favorable to Plaintiff, is again an attack on the sufficiency of the evidence, not the legal reasonableness of her actions when the facts are interpreted in Plaintiff's favor.

**B. Jackson and Gomez's clearly established argument rests on disputed premises about what they knew and when they knew it.**

For this Court to have jurisdiction over the denial of Jackson and Gomez's qualified immunity defenses, they would need to argue that a reasonable officer could have believed it was lawful to do nothing when an inmate repeatedly threatened suicide and a fellow officer heightened the risk by provoking him to take his own life. Their reply concedes this is the rule. Doc. 99 at 5 (accepting that *Snow* and *Greason v. Kemp*, 891 F.2d 829 (11th Cir. 1990), establish liability where an officer "had subjective knowledge that an individual was suicidal; did nothing with that information"). All that remains is whether the evidence shows they knew. *See Murdock v. Montgomery Cnty.*, No. 21-13616, 2024 WL 4637687, at *7 (11th Cir. Oct. 31, 2024) (where officials conceded that doing nothing after

notice would violate clearly established law, their defense "turns solely on whether the evidence could support a finding" of notice, so no jurisdiction).

Instead, Jackson and Gomez's arguments for qualified immunity at summary judgment focused on their version of what they knew that night and when they knew it. Those are quintessential fact questions. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) ("Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact . . . ."). And questions about what facts a party may prove at trial do not give this Court jurisdiction over Defendants Jackson and Gomez's appeal. *Johnson*, 515 U.S. at 313.

### *1. Jackson and Gomez's arguments both turn on what they knew.*

Jackson and Gomez's arguments turn on their subjective knowledge that Plaintiff was suicidal and on the foreseeability that he would attempt suicide after Tracey told him to hang himself. Knowledge is a question of fact, and foreseeability in this context reduces to the same question: what did they know?

Jackson and Gomez argued that they did not know Plaintiff was suicidal and that the record was "utterly devoid of any evidence" of "any such specific knowledge." Doc. 75-1 at 14. That is an evidentiary sufficiency argument in its own terms, and the district court rejected it. Doc. 107 at 11. Challenges to whether officers "actually knew" of the risk are "precisely the type of challenge that [this

Court] lack[s] jurisdiction to review at this stage." *Melendez*, 2024 WL 3880013, at *5. For Jackson, the argument disputes that she heard the 8:00 p.m. report and Plaintiff's repeated threats, overheard Tracey tell him to "do it," and hung up on him when he said he was suicidal. Doc. 107 at 2–3, 9–11. For Gomez, it disputes that he heard Plaintiff banging, observed his suicide threats throughout the evening, and heard Tracey's attempts to agitate him. Doc. 107 at 3–4, 12.

Jackson and Gomez likewise argued that Plaintiff's suicide attempt was not foreseeable. Doc. 75-1 at 9. But that argument reverts to their subjective knowledge of the strong likelihood that Plaintiff would self-harm. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) ("Foreseeability, for the purpose of establishing deliberate indifference, requires that the defendant have had subjective knowledge of a risk of serious harm, meaning, in a prison suicide case, knowledge of a strong likelihood rather than a mere possibility that the self-infliction of harm will occur.") (citations and quotation marks omitted). It is "a factual argument repackaged as a legal one." *Melendez*, 2024 WL 3880013, at *6.

#### 2. *Their timing argument presents disputes with the facts favorable to Plaintiff, not a legal question.*

Jackson and Gomez both argued that they became aware of a risk to Plaintiff only after Tracey told Plaintiff to kill himself. Doc. 99 at 2–3, 5. For Jackson, the

record shows that she knew of Plaintiff's other threats of suicide that night, including those that came after Tracey left the area near his cell. Doc. 107 at 4, 11. Jackson did worse than nothing: when Plaintiff told her over the intercom that he was suicidal, she hung up and stopped answering the intercom.

Gomez observed Plaintiff's suicide threats throughout the evening, Doc. 107 at 11–12, and was within feet of Tracey and Plaintiff as Tracey was yelling at Plaintiff to kill himself. Doc. 99 at 2. Yet he walked away. *Id.* A jury could infer that he had ample time to get the nurse stationed just off the main booking area. *See* Doc. 93 at 16.

Defendants argued, given the limited timeline in their version of events, that they did not have time to become "aware," let alone to act. How much time they had, and whether they disregarded the risk in that time, are for the jury. *Goebert*, 510 F.3d at 1327 ("Disregard of the risk is also a question of fact that can be shown by standard methods."). And this argument, like their others, rests on their own disputed account of when and what they knew, not a legal question of whether there was a violation of clearly established rights. *See Melendez*, 2024 WL 3880013, at *3 (dismissing where appellants did "not raise any legal arguments premised on the undisputed facts").

## V. NO DEFENDANT CHALLENGED THE MINISTERIAL DUTY BELOW, AND THEIR OFFICIAL IMMUNITY ARGUMENTS DO NOT GIVE THE COURT JURISDICTION NOW.

The district court decided the duty from the text of Policy 5.22. Doc. 107 at 17–18. No Defendant offered a contrary reading of that text, and the district court found other evidence supporting its reading, including statements by Tracey. Tracey argued only that she did not breach the duty, or that other duties were discretionary. Jackson and Gomez preserved no official immunity argument at all. Breach is the merits, and forfeited arguments are not before the Court, so nothing Defendants raise about official immunity can give the Court jurisdiction.

### A. Tracey conceded there was a ministerial duty, and her arguments below focused on her breach of the duty.

#### *1. Tracey effectively conceded the duty the district court found.*

The only legal question on appeal could be whether there was a ministerial duty. *English*, 75 F.4th at 1157. That argument, for Tracey, is foreclosed by her own statement of undisputed facts, in which she agreed that the jail policy arguably "provides that an inmate's suicide threat should be reported to a 'Mental Health Professional' who then is supposed to interview the inmate and review the medical chart at some unspecified time." Doc. 74-2 at 5–6 ¶ 43; *see Murdock*, 2024 WL 4637687, at *7 (relying on counsel's concession of the governing law to limit the issues on appeal). This nearly matches the district court's finding that each

Defendant had at least one “ministerial duty to notify medical staff of a suicide threat.” Doc. 107 at 17.

The rest of her arguments do not present appealable legal questions. She argues about whether she negligently breached her duty and whether a different duty existed. Doc. 100 at 9–11 (discussing the duty to move a suicidal inmate to a suicide cell). Her negligence is a clear merits issue, and whether she breached a ministerial duty that the district court did not apply is beside the point.

### 2. *Tracey’s remaining arguments go to whether there was a breach, which is the merits.*

As mentioned above, duty, breach, and causation are all elements of the claim against Tracey under state law. *Lundy*, 379 Ga. App. at 383. But the elements do not present the legal issue of official immunity necessary for jurisdiction. *English*, 75 F.4th at 1157.

Tracey argued that she believed Plaintiff or his cellmates were joking earlier in the evening and that it would have been redundant to report to the nurse that Plaintiff was suicidal after she had finished yelling at him to kill himself. Doc. 74-3 at 22–23. Neither resolves whether she should have official immunity. These arguments focus on whether she breached the duty, not whether the duty was ministerial.

The same is true for her affirmative defense to causation. Tracey argued that Plaintiff's suicide attempt was an intervening act that severed causation for any breach of her ministerial duty. The merits of the argument do not present a question of whether she was entitled to official immunity and thus do not provide this Court with jurisdiction over Defendant Tracey's appeal.

#### ***3. Tracey's arguments that her conduct was discretionary address duties the district court never relied upon.***

Her remaining arguments center on whether she had a ministerial duty to move Plaintiff to a suicide cell after he expressed suicidal ideation. Doc. 100 at 9–11. Whether a second duty was discretionary cannot change the result. An official loses immunity by "negligently perform[ing] a ministerial act or perform[ing] a discretionary act with malice or an intent to injure." *Lundy v. Hancock Cnty.*, 368 Ga. App. 772, 778 (2023) (citation and quotation marks omitted). The district court found a ministerial duty to notify medical staff that a jury could find Tracey breached. Her argument about the suicide cell presents no question the Court must answer to review the denial of official immunity.

### **B. Jackson and Gomez never preserved an official immunity argument.**

Defendants Jackson and Gomez failed to preserve their official immunity arguments at summary judgment. *See* Doc. 107 at 21; Doc. 75-1 at 16. They may not now present that argument in earnest for the first time here. "[A]n issue not

raised in the district court and raised for the first time in an appeal will not be considered by this court," and the Court has applied that rule to a qualified immunity argument first raised on interlocutory appeal. *Hall*, 975 F.3d at 1277 n.3 (quoting *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004)).

Jackson and Gomez copied and pasted the same argument into both briefs: that the district court should not exercise supplemental jurisdiction over Plaintiff's state law claims. Doc. 75-1 at 16; Doc. 99 at 6–7.

In their reply brief, they included a new footnote that alleged that their violation of the jail's policy[4] was not a ministerial breach because it all happened so quickly (some three and a half minutes by their count) that the ministerial duty did not have time to form, thus rendering their inaction discretionary. Doc. 99 at 6 n.1. But parties that make passing comments in footnotes do not preserve their arguments. *Fed. Trade Comm'n v. Corpay, Inc.*, 164 F.4th 807, 837 n.7 (11th Cir. 2026) (quoting *LaCroix v. Town of Fort Myers Beach*, 38 F.4th 941, 947 n.1 (11th Cir. 2022)). Otherwise, Jackson and Gomez asserted, without argument, that they were entitled to official immunity in both briefs. Doc. 75-1 at 16; Doc. 99 at 6–7.

---

[4] Both were disciplined by the Rockdale County Sheriff for their violation. Doc. 75-2 at 8 ¶ 36. Tracey's employment was terminated as a result of hers. *Id.* 8 ¶ 35.

## VI. ANY APPEAL THAT PROCEEDS SHOULD BE CONFINED TO LEGAL QUESTIONS DECIDED ON THE RECORD FAVORABLE TO PLAINTIFF.

If the Court reaches any question, it should be only this one: whether clearly established law, by precedent or with obvious clarity, gave fair warning that an officer violates the Fourteenth Amendment when, knowing an inmate is suicidal, she or he does nothing to get him help, and in the case of Tracey, instead encourages him to hang himself. That is the legal question framed with facts construed in Plaintiff's favor.

In deciding it, the Court has two options for treating the facts. It may accept the district court's findings "if they are adequate," or it may conduct its own analysis in the light most favorable to the plaintiff, and even then, it "will not disturb a factual finding by the district court if there is any record evidence to support that finding." *Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024) (quoting *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996), and *Stanley v. City of Dalton*, 219 F.3d 1280, 1287 (11th Cir. 2000)); *see also Johnson*, 515 U.S. at 319 (explaining that the court of appeals "can simply take, as given, the facts that the district court assumed," and must review the record only if the district court did not state them). The district court's findings are adequate: it identified the facts it treated as undisputed and the facts a jury could find for each Defendant.

Because Defendants' arguments below rest on disputing those facts, the Court should accept the facts the district court assumed.[5]

Nor should the Court exercise pendent appellate jurisdiction over the state law merits defenses: breach, causation, assumption of the risk, and comparative negligence. None is an immunity question. The "critical inquiry" is "whether the appealable issue can be resolved without reaching the merits of the nonappealable issues." *In re MDL-1824 Tri-State Water Rts. Litig.*, 644 F.3d 1160, 1179 (11th Cir. 2011) (citing *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010)). Any immunity question here can be resolved without them. *See Aguirre-Jarquin v. Seminole Cnty.*, 158 F.4th 1276, 1295 (11th Cir. 2025) (declining pendent jurisdiction over the merits of a state law claim).

---

[5] Tracey now says video leaves "no genuine dispute of fact about the actions of the parties," App. Doc. 24 at C-5, but she does not say which video or which action. The district court reviewed the videos and relied on them for the actions that matter: Tracey's hanging motion and Plaintiff wrapping the cord around his neck. Doc. 107 at 4–5. Whether the district court correctly interpreted the video "is a factual one," and the Court "lack[s] jurisdiction to make that call at this stage of the litigation." *Chisesi v. Hunady*, No. 21-11700, 2024 WL 1638587, at *5 (11th Cir. Apr. 16, 2024).

## VII. CONCLUSION

The Court should dismiss this appeal for lack of jurisdiction. If it reaches any question, it should be whether, under Plaintiff's version of the facts, it was clearly established that Defendants' failure to adequately respond to his strong likelihood of self-harm violated his constitutional rights. However, because Defendants "never accept the facts in the light most favorable to [Plaintiff]" but rather only "directly challenge the factual inferences that the district court drew from the evidence," this Court should conclude it lacks jurisdiction over this appeal. *Melendez*, 2024 WL 3880013, at *6.

Respectfully submitted this 13th day of November, 2026.

*/s/ Wingo Smith*
Jeff Filipovits
Wingo Smith
FILIPOVITS & SMITH, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
(404) 905-2225
jeff@civil-rights.law
wingo@civil-rights.law

*/s/ James M. Slater*
James M. Slater
SLATER LEGAL PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
(404) 458-7283
james@slater.legal

*Counsel for Plaintiff-Appellee Ezra Smith*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, it contains 5,111 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ James M. Slater*
James M. Slater

## CERTIFICATE OF SERVICE

I certify that on November 13, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will automatically send notice of the filing to all counsel of record.

*/s/ James M. Slater*
James M. Slater